## HANDY GOVERNOR CORPORATION v. GENERAL CARBURETOR SALES CO., Inc.

### No. 161.

Circuit Court of Appeals, Second Circuit.

May 8, 1939.

Gifford, Scull & Burgess, of New York City (George F. Scull, of New York City, Harold F. Watson, of Washington, D. C., and H. H. Hamilton, of New York City, of counsel), for plaintiff.

Ward, Crosby & Neal, of New York City (William A. Strauch, James A. Hoff-

man, and Rex P. Mulligan, all of Washington, D. C., of counsel), for defendant.

Before SWAN and AUGUSTUS N. HAND, Circuit Judges.[1]

SWAN, Circuit Judge.

This is a patent infringement suit, presenting the usual issues of invalidity and non-infringement. The plaintiff, Handy Governor Corporation, is the owner by assignment of the three patents in suit. The nominal defendant is a distributor in Brooklyn of the accused device, which is manufactured by Leibing Automotive Devices, Inc., a Michigan corporation. The latter openly assumed defense of the suit and will hereafter be called the defendant.

The patents relate to governors for internal combustion engines. A "governor" is a speed controlling device installed in the manifold for the purpose of regulating automatically the quantity of fuel supplied to the engine of a motor vehicle in order to prevent the driver thereof from exceeding a predetermined speed, while permitting him to maintain such speed, within reasonable limits, regardless of changing conditions of load on the engine. The Handy & Bull patent, No. 1,584,929, May 18, 1926, although not the earliest issued, has the earliest filing date (May 21, 1920) and will be first considered. It discloses an unbalanced butterfly (governor) valve inserted in the manifold between the engine and the throttle (carburetor) valve. The movement of this governor valve is intended so to vary the aperture through which the motor fuel passes from the carburetor to the engine that only enough fuel may reach the engine to permit it to maintain the desired speed under varying load conditions. Thus the governor valve causes the fuel supply to vary proportionately as the load upon the engine increases or diminishes.

There are two forces within the manifold operating upon the governor valve and tending to close it. One is the difference in pressure within the manifold on the downstream (engine) and upstream (carburetor) sides of the governor valve. With the throttle valve wide open, its normal position for the predetermined maximum speed, the pressure on the upstream side of the governor valve will be substantially atmospheric; but if the governor valve is partially closed, as will be the case when the load on the engine is light, a partial vacuum will result on the downstream side, due to the suction created by the intake stroke of the engine's pistons. Hence, the atmospheric pressure on its upstream side will tend to move it further toward a closing position. The second force tending to move it in the same direction, on account of its unbalanced character, is the impact of the flow of fuel on its upstream side. Since the governor valve cannot be permitted to close entirely and thereby cut off fuel for the engine, a spring is provided to resist the closing tendency of the governor valve. But the problem of supplying the proper resistance to the forces operating to close the governor valve is complicated by the fact that as an unbalanced butterfly valve moves toward a closed position, the torque (valve turning moment) has an unequal increment or curved line characteristic. Consequently, the resistance offered by the usual straight line spring, which has an equal increment characteristic, is inadequate. The plaintiff asserts that Handy & Bull were the first to realize the problem of torque and to provide a means whereby the torque of the governor valve is balanced in all its positions by a countervailing resistance. To the spindle on which is mounted their unbalanced butterfly valve, is attached a lever arm (43) which is in contact with another lever arm (41) to which is connected an ordinary helical spring. These lever arms are so shaped that, as the butterfly valve moves toward its closed position and the torque thereby increases, their point of contact is shifted radially so that at all positions of the governor valve the moment exerted by the spring counterbalances the closing effort of the valve. The balancing is arranged to position the governor so that the correct amount of fuel for the predetermined speed will be fed to the engine. In actual operation, there is a momentary state of unbalance when the load on the engine is altered, but the governor valve then moves to its correct position for that degree of load, and when the predetermined speed is again attained the balance is restored. Thus, if the load on the engine is increased, as by starting up a hill, the engine speed will decrease and the suction of the engine will be lessened. This de-

---

[1] NOTE. Judge MANTON sat at the argument of these appeals but resigned before the opinion was written.

creases the vacuum above the governor valve and the rate of flow of fuel, with the result that the forces tending to close the governor valve are less than the force of the spring tending to open it. Hence, the valve is opened, more fuel is fed to the engine, and its speed is increased until at the predetermined speed the opposing forces are again brought into balance. The reverse operation occurs when the load is lightened.

As will be apparent from the above discussion, governor valves of the mixture-flow type disclosed by the Handy & Bull patent depend for successful operation upon their subjection to the normal forces within the manifold, that is, the impact of the flow of fuel upon the upstream side of the unbalanced butterfly valve and the difference in pressure upon its upstream and downstream sides, and the balancing of those forces by a countervailing resistance. If one of these forces is even partially removed, such balance will be destroyed. Such a situation will occur when the driver "cheats" or "steals" with his throttle valve. This means that he manipulates his throttle so as to speed up the engine above the predetermined limit. It can be accomplished by a partial closure of the throttle valve when the engine is running at the predetermined speed, because such closure results in a partial vacuum on the upstream side of the governor valve. Since the balance between the forces tending to close the governor valve and the spring resistance tending to open it has been adjusted upon the assumption that the upstream side of the governor valve will be subjected to atmospheric pressure when the engine is running at the predetermined speed, a reduction of the pressure upon that side destroys the balance and permits the governor valve to open too wide, thus supplying so much fuel to the engine that the predetermined speed may be exceeded. Hufford appears to have been the first to discover the reason why there can be "throttle-steal", and his patent No. 1,537,944, issued May 19, 1925, application dated August 22, 1923, discloses means to prevent it. Hufford discloses a governor of the mixture-flow type, though of quite different construction than that of the Handy & Bull patent. The portion of the Hufford device material to the case at bar is the arrangement to prevent "stealing". This consists (exhibits 10 and 11) of a piston P encased in an auxiliary cylinder, the lower end of the piston being subjected through an opening to atmospheric pressure and the upper end, through a passage to the manifold, to the pressure existing therein between the governor valve and the throttle valve. Consequently, when the throttle valve is wide open and the pressure on the upstream side of the governor valve is that of atmosphere, the piston P is inoperative; but when the pressure on the upstream side of the governor valve becomes less than atmosphere due to partial closure of the throttle valve, the piston P is advanced and moves a valve G', mounted concentric to the governor valve G, to the correct position for the particular degree of load under which the engine is laboring. Although Hufford's drawings show two valves, the specifications state that the valve G' may be dispensed with and the piston P operatively connected with the governor valve G.

The Bull patent, No. 2,048,423, granted July 21, 1936, on an application filed June 8, 1929, is essentially a combination of the unbalanced butterfly valve governor of the Handy & Bull patent and the anti-steal piston device of Hufford. Two additional functions ascribed to the piston in the specifications are not now material, and need not be explained.

The plaintiff started business about 1920 with the governor of the Handy & Bull patent. Only an insignificant number were made but governors shown as exhibit 7, which were apparently an adaptation of the Handy & Bull and Bull structures without an anti-steal piston, were sold to the number of 200,000 by 1928. In that year the plaintiff acquired the Hufford patent and began marketing governors with the anti-steal piston of the Bull patent. Upwards of a million of these have been sold. The defendant was organized in 1931 and put on the market its accused governor in 1934.

It is admitted that mixture-flow governors using an unbalanced butterfly valve were well known to the prior art; none of them had been commercially successful. The plaintiff urges that Handy & Bull were the first to realize and solve the problem of torque. We agree with Judge Byers' view that the claims in suit are not anticipated by the patents cited against them and are valid. Of the prior patents it will suffice to refer to Jennings, No. 1,379,186, and Pierce No. 1,461,933, on the strength

of which claims 3 and 16 of the patent to Handy & Bull and claim 17 of the patent to Bull were given a narrow interpretation and found to be not infringed. The patents of Jennings and Pierce relate to governors of the "static vacuum" type. In contrast to governors of the mixture-flow type, they do not rely at all for their operation upon the force of the flow of fuel within the manifold but depend solely upon variations in the static pressure in the manifold on the downstream side of the governor valve to set the valve in its correct position for each change of load on the engine. A diaphragm in Jennings and a piston in Pierce is exposed to the atmosphere on one of its sides and to the manifold pressure on the other and is caused to move by the difference in pressure on its two sides. Such movement is transmitted to the governor valve. The problem before these inventors was that a given movement of the governor valve will cause a proportionately greater variation in the effective valve aperture depending upon whether the valve is nearly closed or nearly open. Jennings solved this problem by a series of levers and Pierce by a series of springs. Neither was concerned with torque of the governor. Their specifications contain no mention of it and in all probability their butterfly valves were balanced; and in that event there could be no substantial amount of torque. The very slight difference in the length of the wings shown in the drawings is an insufficient basis for the defendant's contention that these patents disclosed unbalanced valves. In our opinion Jennings and Pierce are not sufficiently close to the mixture-flow unbalanced governors of Handy & Bull and Bull to require the narrowing of their claims.

Turning to the question of infringement it is to be noted that the defendant's governor does not have an unbalanced butterfly valve of the ordinary type. Its valve consists of two blades spaced apart, one of scooped shape, the other flat; and between them is inserted a bridge so that when the valve is closed there are four points of closure instead of two as in the ordinary butterfly valve. The valve, however, has the characteristics of one of the ordinary unbalanced type, since its left wing is larger than its right and its turning moment around its axis due to the mixture-flow has an unequal increment characteristic. The spring arrangement to resist the torque of the valve when actuated by forces within the manifold tending to close it also differs from that of the plaintiff's patented governors. Instead of two lever arms whose point of contact shifts radially, as in the plaintiff's Handy & Bull and Bull patents, there is but one arm which is fastened to the valve pivot. A helical spring 53 is attached to a pin on this arm. When the valve is open the arm is so positioned that the pin is nearly in line with the valve pivot; but as the valve moves toward closing, the arm is carried downwardly and the position of the pin becomes increasingly below that of the valve pivot. It is this fact which enables the spring to provide the necessary variable force to resist the torque of the valve. There is also a curved-line spring with which the arm comes into contact after the arm has turned about half way toward its closed position, but it is spring 53 which supplies the unequal increment characteristic. The accused structure also possesses a "throttle steal" device. This consists of a piston which is subjected on its right end to atmosphere and on its left to the pressure within the manifold between the governor valve and the throttle valve. A light spring tends to resist the movement of the piston to the left. The piston is not attached to the governor valve, but under throttle steal conditions it is moved to the left by atmospheric pressure and coming into contact with a lug on the right-hand blade of the governor valve pushes the valve into its correct position.

The district judge held that the defendant's device does not embody "an unbalanced butterfly valve" as required by claim 16 of Handy & Bull and claim 17 of Bull. With this conclusion we cannot agree. The accused valve is clearly unbalanced since one wing is larger than the other and, as the defendant's expert admits, it is "so arranged that it has a turning moment around its axis due to the flow" of the fuel. Mr. Ray, an expert called by the plaintiff, said that it is not what is ordinarily called a butterfly valve but it is similar to one, although the passages are quite different. Mr. Leibing referred to it in his patent as "of the pivoted or butterfly type." The defendant's valve has the general characteristics of the ordinary type of unbalanced butterfly valve; it is so constructed that the forces operating within the manifold tend to close it, and

its torque is counterbalanced by a spring having an unequal increment characteristic; hence, its mode of operation is the same as that of the plaintiff's governor. There is nothing in the prior art which requires the plaintiff's patents to be limited to any specific form of "unbalanced butterfly valve," and we think the defendant's structure falls within the quoted phrase.

It is urged that the district judge also erred in finding that the spring mechanism of the defendant's governor is not the equivalent of that disclosed in the plaintiff's patents. Claim 3 of Handy & Bull calls for "* * * a spring, and means transmitting the force of said spring to oppose the closing movement of said valve, said means constructed and arranged to increase the effort exerted on the valve by the spring as the valve is moved in the closing direction to such an extent as to balance the closing effort on the valve in all positions thereof when the motor is running at a predetermined speed."

Literally the defendant's spring mechanism meets this definition, although its arrangement is quite different. Judge Byers thought that the "means" referred to in the plaintiff's patent was not entitled to a wide range of equivalency but "only one in which a valve arm and a spring arm, such as in Bull, would cooperate so as to present a visible movable point of application." As explained above the defendant has no spring arm and the spring is attached directly to the valve arm, but the spring's point of action shifts radially as the valve arm turns and this serves to give the resistance of the spring an unequal increment characteristic. This is the full equivalent of a spring arm. We are unable to find in the prior art any structure which requires the plaintiff's patents to be so limited as to exclude such an equivalent. In our opinion the accused structure infringes both claims 3 and 16 of Handy & Bull and claim 17 of Bull.

■ The main defense with respect to the throttle steal device disclosed in claims 16 and 20 of Hufford is that of invalidity. Benjamin, Pierce and Jennings are relied upon as anticipations. Pierce and Jennings have been already discussed. They are "static vacuum" governors and have nothing to do with the problem of throttle steal. It is conceded that there can be no throttle steal with such governors since they rely for the correct positioning of the governor valve upon the movement of a means which is subjected on one of its ends to the pressure of atmosphere and on the other to the manifold pressure on the engine side of the governor valve. In our opinion Benjamin No. 1,212,177 also belongs to the static vacuum type. His specifications support this view. The only thing opposed to it is a small arrow at the top of figure 1 which is apparently intended to show the direction of fuel flow although the specifications do not mention that subject. Mr. Bull thought the direction of the arrow was a draftsman's error; we are inclined to agree. But in any event, we do not think Benjamin discloses a throttle steal device which anticipates Hufford. Benjamin's piston which is exposed at one end to atmosphere controls the positioning of his governor valve at all times; such a governor can present no problem of throttle steal. That phenomenon is apparently peculiar to mixture-flow governors. Hufford was the first to realize and solve the problem. In retrospect, what he did may seem rather obvious, since it involved no more than a means to maintain atmospheric pressure in the manifold between the governor valve and the throttle valve, but it was a clear contribution to the effectiveness of mixture-flow governors and was properly accorded the status of an invention. As to the infringement of Hufford's claims little comment is necessary. The throttle steal pistons of the patents in suit are substantially similar to the piston of the accused structure. The finding of infringement in this respect was correct.

The decree is modified to the extent of holding infringed all the claims in suit, and as thus modified is affirmed.