## LEIBING AUTOMOTIVE DEVICES, Inc., v. WILDERMUTH.

### No. 170.

Circuit Court of Appeals, Second Circuit.

May 8, 1939.

Ward, Crosby & Neal, of New York City (William A. Strauch, James A. Hoffman, and Rex P. Mulligan, all of Washington, D. C., of counsel), for appellant.

Gifford, Scull & Burgess, of New York City (George F. Scull, of New York City, Harold F. Watson, of Washington, D. C., and H. H. Hamilton, of New York City, of counsel), for appellee.

Before SWAN and AUGUSTUS N. HAND, Circuit Judges.[1]

SWAN, Circuit Judge.

This is a companion case to Handy Governor Corporation v. General Carburetor Sales Co., 104 F.2d 295, decided herewith; but the parties have changed sides. Here Leibing Automotive Devices, Inc., as patent owner, is the plaintiff and Handy Governor Corporation, manufacturer of the accused device, is the real defendant (and will be hereafter referred to as such), since it has assumed defense of its distributor Wildermuth. The bill of complaint charges infringement of several patents, but only one is involved in this appeal, namely, patent No. 2,081,825, issued May 25, 1937, to the plaintiff as assignee of Leibing and Fageol, on an application dated August 2, 1934. This patent covers the accused governor of the companion suit, and the description therein contained need not be here repeated. Four claims, 1, 2, 5 and 8, are in suit. It will suffice to quote claim 8 as typical: "8. In a maximum speed governing device, a conduit, a pivoted valve in said conduit for controlling the effective flow area therein and responsive to the velocity of fluid flow therethrough, and means to close said valve upon the establishment of a predetermined vacuum in said conduit, said means comprising a reciprocatory plunger positioned to contact said valve to effect closing thereof, a cylinder secured to said governing device, a piston in said cylinder for operating said plunger, means to subject one side of said piston to vacuum in said conduit, means to subject the opposite side of said piston to atmospheric pressure and means to maintain said valve closing means inoperative with reference to said valve at all pressures above said predetermined vacuum." The district court held the claims invalid.

The inventive merit asserted for the patented governor over governors of the prior art resides in so constructing it that the "throttle steal" piston is disconnected from the governor valve and is restrained by a spring so as to remain inoperative until a predetermined vacuum exists in the manifold between the governor valve and the throttle valve. Thus the governor valve is unhampered by the piston and operates free of interference by it except under conditions when throttle steal may occur. Under such conditions the piston is moved to the left and a plunger attached thereto pushes against a lug on the governor valve urging it toward a closed position. The advantages alleged to result from this construction are two-fold: (1) the governor valve will remain operative even if the piston should stick in its cylinder by reason of accumulated oil and dirt; and (2) the engine will develop 10% more power than with the other type of governor because, under normal conditions, i. e. when throttle steal conditions do not exist, the piston will not be urging the governor valve toward a closed position.

---

[1] NOTE. Judge MANTON sat at the argument of this appeal but resigned before the opinion was written.

It is obvious that if the piston is positively connected to the governor valve, as it was in the governor constructed under the defendant's Bull patent No. 2,048,423, the entire governor will be inoperative if the piston should become stuck in its cylinder; and it is equally clear that the plaintiff's device could continue to operate as a governor, without its anti-steal function, although the piston were stuck, if it stuck in its closed or nearly closed position at the right hand end of the cylinder. But it certainly did not require invention to attain this advantage. The substitution of a pushing plunger for the link connection of the Bull patent is a most simple mechanical expedient. Such an arrangement is shown in the Knauss patent No. 1,670,365. This is not urged as a complete anticipation, for Knauss used his piston to oppose forces tending to open the governor valve, but his arrangement shows that the idea of the absence of a positive connection between piston and governor valve was old and obvious to anyone familiar with the art. The patent in suit was allowed over the Knauss reference only after the claims had been amended so as to require the piston to remain inoperative until a "predetermined vacuum" exists in the manifold. This is effected by spring 112.

It is contended that the insertion of this spring, which keeps the piston from functioning until throttle steal conditions arise, permits the engine to develop 10% more horse-power than it shows when the spring is removed. This is based upon exhibits 12 and 13 which are charts of tests made by the defendant of the plaintiff's device and of its own device both with and without the piston spring. The tests were made for the purpose of showing the effect on throttle steal of the removal of the piston spring. Mr. Fageol testified that the curves on exhibits 12 and 13 demonstrated that the removal of the spring caused a loss of about 10% of the maximum power developed by the engine. Mr. Bull, the defendant's expert, agreed, but he explained that this is because, with the piston spring removed, the pressure of the piston plunger upon the governor valve will increase and, unless the balancing spring of the valve is readjusted, will cause the governor valve to close too far. If such a readjustment is made, he said that there would be no loss of power by reason of removal of the piston spring and the test represented by exhibit BB corroborated him in this opinion. And this must manifestly be true, since a mixture flow governor depends for successful operation upon balancing the forces within the manifold tending to close the governor valve against the countervailing force of the spring resistance tending to open it. The alleged advantage in respect to horse-power by reason of the introduction of the piston spring was proved illusory. Indeed, no suggestion of it is contained in the patent. The insertion of this spring added nothing of importance to the functioning of the anti-steal piston. Nor was it a new conception, for Hufford's patent No. 1,912,773 shows a spring 33 holding lever 28 against the end of piston 32. This is equivalent to a spring on the piston itself.

We conclude, therefore, that the district judge was right in holding that elimination of a positive connection between the piston and the governor valve and the insertion of the piston spring involved only mechanical adjustments of prior art governors and did not rise to the dignity of invention. It is true that the patented governor has enjoyed a considerable measure of commercial success and that the defendant has paid tribute to its utility by imitation. Nevertheless, such indicia of invention cannot validate a patent plainly lacking in inventive concept. Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co., 2 Cir., 276 F. 910; Trimble v. Woodstock Mfg. Co., D.C.W.D. N.Y., 297 F. 524, affirmed 2 Cir., 297 F. 529; United Drug Co. v. Ireland Candy Co., 8 Cir., 51 F.2d 226.

Decree affirmed.