## WARNER JEWELRY CASE CO. v. WOLF-SHEIM & SACHS, Inc.

Civil Action No. 1357.

District Court, W. D. New York.

Feb. 7, 1946.

Bean, Brooks, Buckley & Bean, of Buffalo, N. Y. (Edwin T. Bean and Harrison

M. Brooks, both of Buffalo, N. Y., of counsel), for plaintiff.

Herbert J. Jacobi, of New York City, and Adrian Block, of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

Action has been brought for the alleged infringement of plaintiff's patent, Dean No. 2,250,433. It is particularly alleged that claims numbered 4 and 7 were infringed. The defense is invalidity and non-infringement of the patent, and defendant has counterclaimed for a decree holding plaintiff's patent invalid and void. The claims cover jewelry display boxes molded of plastic material.

The jewelry box art is admittedly old. In the prior art we find that many patents have been issued for jewelry display boxes and that there are other unpatented boxes for like use. The use of molded material for these box structures has been known and taught for several years prior to the filing of the application for the patent in suit. It is equally true that numerous patents have been issued on seeming little changes from the combination of fairly comparable elements in prior art patents. The plaintiff makes no claim that its patent is revolutionary or that it is a broad basic patent. Both the plaintiff and the defendant have been manufacturing jewelry display boxes in large numbers for many years. The defendant has been longer in this business.

In Claim 4 plaintiff asserts that the elements are a molded body having a hinged cover, showing an article displaying support elevated above the hinged mounting, the side walls of the body extending above the hinged mounting at the back portion of the body, the cover fitting down over the elevated support in closed position, a lined dome immediately over the support to protect the displayed article and the interior molded surface of the cover about the lined dome exposed about the elevated support, when the cover is closed.

Claim 7 includes a base portion formed by the lower fixture of the box, and elevated article support upstanding from the base portion and a body formed with a well to receive a jewelry supporting pad, the rim of the well being substantially continuous and extending across the rear portion of the body and sloping downwardly therefrom towards the front to provide in effect a forwardly inclined easel supported frame for the pad, a cover with means pivotally supporting the cover on the body behind the well and in a plane lower than the rear portion of the rim, the back wall of the well being substantially upright, the pivotal supporting means being disposed in proximity to the back wall and at the base thereof in such lower plane whereby when the cover is in a lifted position the pivotal supporting means will be concealed by the framing rim, and the front portion of the body forwardly of the well continuing in the general slope of the framing rim to maintain the effect of an easel support for the rim.

Two preliminary matters may first have disposition.

Rule 50 of the Patent Office Rules of Practice, 35 U.S.C.A.Appendix, provides that "The drawing must show every feature of the invention covered by the claims, and the figures should be consecutively numbered, if possible." Claim 7 is not disclosed in Fig. 7 of the drawing, because it does not show any cover. The term "drawing" includes all of the several views. All the remaining parts not shown in Fig. 7 are shown in Figs. 1–6, inclusive. We think this is sufficient. Ex parte Wadsworth (1923) Decision of the Commissioner of Patents, p. 88.

The patent in suit has frequent reference to ornamentation. This feature is emphasized throughout the specifications as well as in the eight claims of the patent. It is stated that the invention relates "to a jewelry box and has particular reference to an ornamental display box"; that boxes of prior designs have been so constructed "as to necessitate the ornamentation being interrupted to avoid marring"; that "it has been possible to mold the surface ornamentation concurrently with the forming of the box and thereafter wipe or otherwise apply surface coloring to the ornamented areas." It describes the patent invention as having as its object to provide a box in which the surface ornamentation is protected against marring and "to preserve the appearance and beauty of the box indefinitely." Many of the references to "ornamentation" in the original and amended claims were stricken in the final form of these.

It is also stated that the invention has a further purpose to provide a box which may be materially increased in size for enhancing the display effect in those boxes to which the ornamentation is applied. This is not a design patent, nor do we understand that the defendant claims it is

such. Rather, defendant calls attention to the repeated reference to ornamentation as showing that "ornamentation" and "design" were of major importance. The specifications, claims and drawings are directed to structure.

For convenience we here show drawings of plaintiff's device, defendant's alleged infringing devices and certain drawings from the prior art:

tion are (1) the cover "provided with a lined dome immediately over the support to protect the displayed article thereon," and (2) "the interior molded surface of the cover about the lined dome being exposed about the elevated support."

In our opinion in every material respect these "features of construction" in Claim 4 are clearly shown in Mautner patent No.

Ex. 3
(Defendant's box)

Ex. 6 (Dean 2,259,433)
(Plaintiff's box)

Ex. Q (Mautner 105,964)

Cross No. 83,607

Ex. L (Mautner 105,121)

Sundee    2219212

Katz 108,082

Fishman 1,759,189

As to Claim 4, it is asserted by the plaintiff that the two features of construction which constitute the essence of the invention 105,964; Mautner patent No. 105,121; "Gruen" Exhibit K; and Exhibit L (id. 105,964).

The Mautner patents (and Exhibit L) show a lined dome defined by internal shoulders or ribs receiving finishing pieces immediately over the support to protect displayed articles thereon. Mautner patent No. 105,964 shows the finishing piece inserted therein. This acts to protect the displayed article. Mautner patent No. 105,121 does not disclose any finishing piece, but the testimony is that it was the practice to put this in the cover. When so placed this finishing piece would protect the article displayed. "Gruen," supra, does show a lined dome, but the testimony is that the lining which is shown was put in for ornamental purposes. It also serves the purpose of protecting the article displayed. Each of the last four described structures shows an interior molded surface of the cover, about the dome, and three of them show this as immediately about a lined dome. The extent of the exposure of the lined dome around the interior of the cover is not material. Many of the patents in the prior art either indicate the use of some material in the cover which would serve to protect the article displayed or such material could easily be inserted. Differences shown are so inconsequential as to be immaterial. The mere lining of the dome is well within the ken of one skilled in the art in question. An interior molded surface was common in molded boxes. The original model of "Gruen", Exhibit K, made of wood, was designed in 1935. The plastic boxes were made about a year thereafter. Exhibit L, supra, was molded for the defendant in 1937. The defendant lined and completed them. Both Exhibits K and L were sold in large quantities prior to the filing of the application herein.

It is obvious that each of the last hereinbefore mentioned patents and structures disclose "a body having a hinged cover, showing an article displaying support * * *." It is true that none of the patents or structures last-hereinbefore mentioned disclose an article displaying support elevated over the hinged mounting, side walls of the body extending above the hinged mounting at the back portion of the body, the cover fitting down over the elevated support in closed position, but these elements will hereinafter be discussed. It may here be said that the patents hereinbefore cited show a cover fitted down and on or over the elevated support in closed position. The other elements just discussed are too familiar in the prior art as to need mention.

Katz design patent No. 108,082; Grose design patent No. 83,607; Flier patent No. 1,774,430; and Heymann patent No. 1,711,531; fully meet the features stated by the plaintiff as constituting the essence of the invention. In so far as Downs patent No. 1,966,662; Warner patent No. 1,789,852; Sundee patents Nos. 2,180,885 and 2,219,212; and Rathbun patent No. 2,046,133; are concerned, it is only necessary to insert a cover in the dome to meet the features claimed, and this surely would be anticipated. Only ordinary skill was required to devise this.

Lynn patent No. 633,522; Poppe patent No. 1,859,049 and Downs patent No. 1,966,662 show the article displaying support elevated above the hinged mounting. All of these last-mentioned patents show a molded surface of the cover or its equivalent about the lined dome exposed about the elevated support when the cover is closed. If these three patents last-mentioned had no lining in the dome or a lined dome, ordinary common sense would have taught the use of a lining both as a protection or to enhance the display of the jewelry.

As to Claim 7, it is believed that all the essential elements of the alleged invention, except those of slight significance, are established to be old and well known in the prior art and in substantially the same form as in the patent in suit. This claim does not include a "molded" body, and obviously this was unnecessary. The claim describes a "jewelry box having a body with a base portion and an elevated article support upstanding therefrom and formed with a well to receive a jewelry supporting pad", and this element needs no mention other than the statement that this is clearly and definitely shown in the patents hereinbefore cited, to wit: Mautner Nos. 105,121 and 105,964; Exhibit L; Sundee No. 2,219,212; Gruen Exhibit K; Katz No. 108,082; Lynn No. 633,522; defendant's catalog of 1918 and 1927, and other patents. It has long been known in the art as a common method of making a display box for articles of jewelry. Other elements in Claim 7, in addition to those in Claim 4, which, as we understand, are claimed to be new are a jewelry box with (1) the rim of the well to receive the jewelry supporting pad substantially continuous and extending across the rear portion of the body and sloping downwardly therefrom towards the front of the body to provide in effect a forwardly inclined easel supported frame for the pad, (2) a cover means pivotally sup-

porting the cover behind the well and positioned lower than the rear portion of the rim, and the pivotal supporting means being disposed in proximity to the wall, at the base thereof and concealed when the cover is open.

Mautner patents, supra; Exhibit L, supra; Gross design patent, supra; defendant's catalog 1927, page 28, and 1927, page 15, as well as 1918, page 19, likewise show the equivalent of this element, and all of the last-mentioned patents, as well as others hereinbefore cited, provide "in effect a forwardly inclined easel supported frame for the pad." This easel shape resulting from the uplifting of one end of the pad has long been an ordinary method of display.

"* * * means pivotally supporting the cover on the body behind the well and in a plane lower than the rear portion of the rim" are disclosed either in the position specifically described in the claim or in a position substantially the same. Fishman patent No. 1,759,189 definitely meets the language in the patent in this respect, as do Poppe patent No. 1,859,049; Lynn patent No. 633,522; Downs patent No. 1,966,662.

The only patents cited in the file wrapper are Downs patent No. 1,966,662; Heymann patent No. 1,711,531; Shiffman patent No. 2,126,049; and Rathbun patent No. 2,045,133. Certain claims were rejected as unpatentable over Heymann in view of Rathbun. Excerpts from the reports of the examiner on three separate submissions are important to be considered, tho we disagree with his final action.

On the first report of the examiner all of the original 16 claims of the patent application were disallowed or had been cancelled, save claims 1, 2, 5 and 6. The examiner points out that it would not be invention to mold the members A and C of Heymann No. 1,711,531 in one integral piece in view of Rathbun's teaching in patent No. 2,046,133 of using moldable materials for box structures. The examiner further said that "To make Heymann's sloping wall run smoothly into the shoulder would not be an inventive act." As to Claim 9 he said the "body being hollowed * * * cannot predicate patentability."

On the second report of the examiner, responsive to amendments, claims 9, 10, 11, 13 and 15 were cancelled, and claim 2 was again allowed. The point again was that these disallowed claims included the idea of making the Heymann receptacle of molded plastic material. The examiner also rejected claim 17, and he points out that in this claim there could be only one distinction between Heymann if molded and the applicant's claim and that this was expressed in the last six lines of the claim. The purpose of the limitation is to present a certain pleasing design effect. The examiner also rejected claims 3, 4, 7, 8, 10, 12, 14 and 16 on the grounds stated as to claim 17. Claims 1, 5 and 6 were reconsidered and rejected because it was not shown that any mechanical function had been shown.

In response to further amendments claims 1, 2, 5, 6 and 17 were allowed. Claims 3, 4, and 7 to 15, inclusive, were withdrawn. In respect to claim 16, which had been rewritten, the applicant said: "In claim 16 the cover is hinged for limiting opening movement. * * * The hinge for the cover is disposed in a plane below the rim so as to be concealed by the elevated support." The examiner said that claim 16 was fully met in the Downs display box save for the construction material. As to the material he said, as he had before, it required no more than mechanical skill to form Downs' elements 10, 12 and 13 and cover 11 from plastic material as taught by Rathbun, and it was not invention to make parts 10, 12 and 13 integral instead of from separate parts. He further said that the use of the hinge structure as shown by Shiffman would be obvious where plastic was used and that "No invention would be required to raise the rear portion of the rim 12 to coincide with the raised back part of pad 14." For these reasons claims 18, 19, and 20 were rejected.

It seems that every element in the two claims in question are shown in the prior art, and most of the patents referred to as a part of the prior art show the assembly of these old parts in combination in comparably the same way as does the plaintiff's structure. There are differences in detail. Plaintiff emphasizes specially as new and novel features of the patent the lined molded dome, the hinged mounting for the cover hidden from view; the location of the mounting providing for the uninterrupted display of the article on the pad and at the same time reduce the overall height of the structure; and the continuous back rim of the well and the slope of the rim of the well; that because of the reduction of height, display of a greater number of jewelry boxes is permitted than others permit in equal space. The location of the

hinged mounting in both the Gruen curvex structure and Mautner patent No. 105,121 accomplishes the result as claimed.

, The rule of determination of patentability is not difficult to find. The difficulty, as usual, comes in the application of the rule. The Supreme Court has spoken definitely many times on the question of the effect of the combination of old elements. Quotations from a few of these should map the course of consideration here.

█ This language from the oft cited case of Hailes v. Van Wormer, Oct. 1873, 20 Wall. 353, 87 U.S. 353, 368, 22 L.Ed. 241, is particularly pertinent here:

"Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

This statement of the rule has been uniformly followed by the Supreme Court. See Knapp v. Morss, 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059; Grinnell Washing Machine Co. v. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; Atlantic Works v. Brady, 107 U.S. 192, 199, 200, 2 S.Ct. 225, 27 L.Ed. 438; Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 29 L.Ed. 76. .

█ In Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 40, 86 L.Ed. 58, the court said:

"Under the statute, 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. * * * Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * * The principle of the Hotchkiss case applies to the adaptation or combination of old or well known devices for new uses. * * * That is to say the new device, however useful it may be, must reveal the flash of creative genius, not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain."

The rules of law hereinbefore stated have been repeated and reiterated and citation of further authority is unnecessary. It is pertinent, however, to call attention to the case of K. Kaufmann & Co. v. Leitman, 2 Cir., 131 F.2d 308, in which the Circuit Court of this District recognized that in a combination of old elements slight changes do not make "invention"; and attention is there called to the significance of the attitude of the Supreme Court respecting the effect of such changes. Each of the claims in suit is a combination of old elements which perform no new or novel function or result amounting to invention. Further, the changes made in plaintiff's patent from anything in the prior art involve nothing more of ingenuity than must be involved in the work of a mechanic skilled in the art.

The most that can be said for plaintiff's structure as showing any possible distinguishing features from that and the prior art were a pivotal connection location, the continuous back wall, the molded interior of the cover, the lined dome as located and the so-called forwardly inclined supported frame for the pad. These features if distinguishable are so slight in difference from the prior art they seem within the skill of every one familiar with the manufacture of products of this character, that the changes come within the skill of the "ordinary workman and engineer in general adequate to devise."

The plaintiff cites National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 8 Cir., 106 F. 693, 697, which is only authority for the statement that "an improvement of an old device or a new combination of old elements" may mark "greater advance in the art and discloses a more useful invention than the conception , of the original machine." No dissent can reasonably be made to this holding. It is quite possible that an improvement or a new combination of old elements may be "invention," but whether they do depends upon the facts which are peculiar to each individual case. The plaintiff also cites Goodyear Tire & Rubber Co., Inc. et al. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721, in support of its position that the patent was invention because the particular device had not been assembled in the

particular manner shown in the patent. These factors were entitled to weight in determining whether the improvement amounted to "invention." In the instant case the improvement of the particular types of the articles in question has been developing for many years and specially has this been true since the use of plastic materials enables the molding to particular forms.

Plaintiff's jewelry box has been well received by the trade and was much in demand (until the shortage of plastics caused its manufacture to be cut down). Plaintiff urges us to use this indication of commercial success as a guide that the box involved invention, following Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298. We believe that commercial success, where shown, is entitled to consideration of magnitude. We do not believe that commercial success, standing alone, however, is sufficient to uphold the validity of a patent without real inventive concept. More must be shown than commercial success alone. Leibing Automotive Devices, Inc. v. Wildermuth, 2 Cir., 104 F.2d 411; Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. In an instance where commercial success is coupled with patentable novelty unknown to the prior art, then it would be a deciding and persuasive factor, but such is not the case here.

We do not consider the question of infringement, because we find plaintiff's patent is invalid. The complaint is therefore dismissed.

The defendant may submit findings on ten days' notice.